# EXHIBIT A

ELECTRONICALLY FILED
4/24/2025 2:53 PM
43-CV-2025-900229.00
CIRCUIT COURT OF
LEE COUNTY, ALABAMA
MARY B. ROBERSON, CLERK

IN THE CIRCUIT COURT OF LEE COUNTY
STATE OF ALABAMA

THE WATER WORKS BOARD OF THE CITY OF OPELIKA, ALABAMA,

Plaintiff,

vs.

Case Number: ________________

3M COMPANY; CHROMALLOY GAS TURBINE, LLC; CONTITECH USA, LLC; CORTEVA, INC.; DAIKIN AMERICA, INC., DUPONT DE NEMOURS, INC.; DURACELL MANUFACTURING LLC; E.I. DUPONT DE NEMOURS AND COMPANY; EIDP, INC.; FREUDENBERG-NOK GENERAL PARTNERSHIP; HENKEL US OPERATIONS CORPORATION; INTERFACE, INC.; INTERFACEFLOR, LLC; JFA LLC; KIMBERLY-CLARK CORPORATION; KLEEN-TEX INDUSTRIES, INC.; KLEEN-TEX USA, LLC; MILLIKEN & COMPANY; M+A MATTING, LLC; MOUNTVILLE MILLS, INC.; MOUNTVILLE MILLS INTERNATIONAL, LLC; MOUNTVILLE MILLS RUBBER COMPANY, LLC; MOUNTVILLE MILLS - THE MATWORKS, LLC; SPECIALTY FABRICS & CONVERTING, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; WASTE AWAY GROUP, INC.; WASTE MANAGEMENT, INC.; WEST POINT FOUNDRY AND MACHINE COMPANY; WESTPOINT HOME LLC; WESTROCK PACKAGING SYSTEMS, LLC; and FICTITIOUS DEFENDANTS A-Z,

Defendants.

## COMPLAINT

Plaintiff The Water Works Board of the City of Opelika (hereinafter referred to as "Opelika Water" or "Plaintiff") brings this action against the above-captioned Defendants and sets forth in detail the parties, facts, legal claims, and damages with particularity, as follows:

## STATEMENT OF THE CASE

1. This case arises out of the historic and ongoing manufacture, sale, use, and discharge of per- and poly-fluoroalkyl substances ("PFAS")[1] in commercial applications. This case does not arise out of the use or discharge of Aqueous Film-Forming Foam ("AFFF") or any products used by, supplied to, or manufactured to the specifications of the federal government.

2. The most toxic and studied chemicals in the PFAS group of chemicals are perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA"). These two (2) chemicals are referred to as "C-8" chemistries because they each contain eight (8) fluorinated carbon atoms. Due to the unparalleled strength of the carbon-fluorine bond, PFOS and PFOA will not degrade naturally in the environment. According to the United States Environmental Protection Agency ("EPA"), PFOS and PFOA are considered to be "persistent, bio-accumulative and toxic" ("PBT") and are harmful to public health and the environment.

[1] As used herein, "PFAS" refers to all perfluorinated compounds, perfluorochemicals, polyfluorochemicals, perfluoroalkyl substances, polyfluoroalkyl substances, related chemicals that degrade to PFAS, and any precursors to PFAS, including but not limited to, perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), GenX, HFPO-DA, NEtFOSAA, NMeFOSAA, PFBS, PFDA, PFDoA, PFHpA, PFHxS, PFNA, PFTrDA, PFTA, PFUnA, 11Cl0PF3OUdS, 9Cl-PF3ONS, ADONA, PFPeS, PFHpS, 4:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 6:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 8:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), PFBA, PFPeA, PFMBA, PFMPA, PFEESA, PTFE, and NFDHA.

3. Because of their persistence in the environment, bioaccumulation in humans, animals and aquatic life, these man-made chemicals exist in the environment for an extraordinarily long time and have been labeled "forever chemicals" by the EPA.

4. PFOS and PFOA chemicals were manufactured for many decades by the Chemical Manufacturer Defendants for use by industrial customers to make waterproof clothing, stain-resistant carpet and textile coatings. The same characteristics that made these synthetic chemicals valued for their ability to repel oil, water, staining and resistant to soil, also make these chemicals resistant to any natural degradation or environmental breakdown. In other words, the same chemical properties that made PFOS and PFOA so valuable and durable as coatings, also made them dangerous to the environment and human health. According to the EPA, ingestion of these chemicals over a period of time can cause cancer and other serious illnesses "that decrease quality of life or result in death."

5. The EPA has advised public drinking water systems to take immediate action to remove "forever chemicals" from public drinking water through the use of "best available technology." The EPA further directed that public water systems must test for levels of PFOS and PFOA and publish the results in their Annual Water Quality Reports with a requirement that test results must be provided to the public "if levels of regulated PFAS exceed [EPA] standards."

6. As of 2024, the EPA has established levels for six (6) PFAS chemicals found in drinking water associated with adverse health effects including liver cancer, kidney cancer, reduced immune system function, lipid levels, reproductive health harm, childhood developmental issues such as low birth weight, endocrine effects and cardiovascular effects. Based on the best available science, the EPA determined there "is no safe level" of PFOS and PFOA in drinking water.

7. Conventional drinking water systems are incapable of removing these "forever chemicals"—such as PFOS and PFOA—from drinking water. Because of the characteristics of these chemicals, they pass through conventional drinking water systems into the environment and eventually into the bloodstream of fish, birds, mammals and the general public.

8. The EPA has found that PFOS and PFOA, as well as certain "short-chain" PFAS, are likely to cause an array of adverse health and environmental effects, including but not limited to, low birth weight in children, miscarriage, and cancer. The current scientific consensus is that there is no safe level of PFOS and PFOA in drinking water.

9. The Defendants in this case, which belong to a variety of different industries, have all caused or contributed—and are continuing to cause or contribute—to these toxic chemicals invading the Plaintiff's drinking water.

10. The Chemical Manufacturer Defendants created and sold these chemicals to industries throughout the State of Alabama and the State of Georgia, with full knowledge of their products' pernicious effects and likelihood of causing pollution to Plaintiff's water supply. Rather than taking efforts to warn or prevent this pollution, these Chemical Manufacturer Defendants actively concealed and withheld information from regulatory agencies, customers, and the general public, all the while causing these chemicals to continuously damage Plaintiff. These Chemical Manufacturer Defendants' efforts to conceal information related to PFAS and mislead regulators and the public continue to this day.

11. The PFAS User Defendants purchased and used PFAS and/or products containing or degrading into PFAS in their industrial processes. These Defendants have continuously caused and permitted PFAS-contaminated waste streams to discharge into the Chattahoochee River, Lake Harding, Halawakee Creek, and the surrounding waterways upstream from where Plaintiff collects

its drinking water. These Defendants do not have authorization to discharge PFAS, and they knew or should have known that their use and discharge of PFAS would pollute Plaintiff's water and cause Plaintiff injury. These Defendants' unauthorized discharges of PFAS upstream of Plaintiff's drinking water intake continue to this day.

12. The Landfill Defendants have continuously accepted, and indeed profited from, PFAS-contaminated waste, which is disposed of in landfills owned and operated by these Defendants. Due to their improper operation of these landfills, the Landfill Defendants have caused and permitted PFAS-contaminated leachate to continuously discharge into the Chattahoochee River, Lake Harding, Halawakee Creek, and the surrounding waterways upstream from where Plaintiff collects its drinking water. These Defendants do not have authorization to discharge PFAS-contaminated leachate, and they knew or should have known that their improper operations and discharge of PFAS would pollute Plaintiff's water and cause Plaintiff injury. These Defendants' improper operation and maintenance and unauthorized discharge of PFAS-contaminated leachate upstream of Plaintiff's drinking water intake continues to this day.

13. All of these Defendants have known for years—sometimes decades—that PFAS (including PFOS and PFOA) should not be discharged via wastewater, stormwater, groundwater, or leachate to wastewater treatment plants or the environment.

14. Nevertheless, the Defendants have jointly and continuously caused these "forever chemicals" to enter the Plaintiff's drinking water.

15. Now, because of the PFAS pollution that Defendants have caused, Opelika Water must find a way to remove these harmful chemicals from its water in order to meet its obligations as a public water provider, comply with federal regulations and guidelines, and most importantly, protect human health and the environment.

16. The Defendants have known or should have known that Opelika Water, like most public water systems, does not have the treatment technology necessary to remove PFAS from raw water. Therefore, Opelika Water will be required to upgrade to costly and sophisticated new treatment technologies in order to remove Defendants' PFAS from its public water supply.

## JURISDICTION AND VENUE

17. Jurisdiction is proper in this Court pursuant to Ala. Code § 12-11-30, because the Defendants' wrongful conduct has jointly and severally caused damage to the Plaintiff in Lee County, Alabama, exceeding $20,000.00 as alleged herein and Plaintiff will continue to suffer damages in Lee County in the future. Plaintiff's real property, which is the subject of this action, is situated in Lee County.

18. The wrongful acts perpetrated by the Defendants which form the basis of this Complaint, including the ongoing and continuing trespass and the creation of an ongoing and continuing nuisance, occurred and is still occurring in Lee County and has injured and will continue to injure the Plaintiff in Lee County within the applicable statutes of limitations. The Defendants' ongoing and continuing conduct has caused—and will continue to cause—Plaintiff to incur damages within the applicable statutes of limitations. Plaintiff's cause of action accrued within the applicable statute of limitations.

19. Venue is proper in this Court pursuant to Ala. Code § 6-3-7, because (i) a substantial part of the events giving rise to this claim occurred in Lee County, (ii) a substantial part of the real property that is the subject of the action is situated in Lee County, (iii) Defendant Waste Away Group, Inc. has its principal office in Lee County, and (iv) Opelika Water resides in Lee County. Further, all Defendants are doing business by agent in Lee County.

**DISCLAIMER**

20. This lawsuit is brought under the laws of the State of Alabama. Plaintiff asserts no federal cause of action, invokes no federal statutes and seeks no relief that is based on any federal statute or laws. Any federal claims are expressly disclaimed by Plaintiff.

21. Complete diversity does not exist between Plaintiff and all Defendants.

22. This case arises out of the manufacture, supply, use, and disposal of PFAS in numerous industries, including the carpet, textile, paper and metal finishing/fabricating industries, and Plaintiff makes no claim that the manufacture or use of AFFF in any way caused or contributed to its damages or the claims asserted in this lawsuit. The Defendants in this case are not being sued over the manufacture, supply, use, or discharge of AFFF.

23. Based upon Plaintiff's investigation into the facts, and upon information and belief, the PFAS currently contaminating Plaintiff's source and drinking water is from industrial sources and is not the result of any AFFF manufactured pursuant to military specifications.

24. Plaintiff expressly disclaims any cause of action or damages arising from or associated with AFFF manufacture, sale, use or disposal by the named Defendants, or by any unnamed defendant or entities, including any legal or factual claim based on alleged "Mil Spec AFFF." Plaintiff expressly disclaims any potential claims arguably arising from any federal enclaves, including any military installations or other locations that may have used AFFF pursuant to military specifications. This case is brought against the Defendants solely in their capacities as private manufacturers and users of PFAS.

**NO CLASS ACTION PARTICIPATION**

25. Several Defendants in this case have been sued in other cases involving allegations of PFAS pollution to public water systems. In 2023, 3M and DuPont settled nationwide, multi-

district, class-action claims related to the contamination of public water supplies with PFAS for approximately $10 billion and $1 billion, respectively. *See In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG (D.S.C.) ("*AFFF Litigation*").

26. Prospective class members in the *AFFF Litigation* had the option of "opting out" of the 3M and DuPont settlements in order to pursue individual lawsuits against 3M and DuPont. Plaintiff validly and timely exercised its right to "opt out" of the *AFFF Litigation* Class Action Settlements with 3M and DuPont to pursue its claims in this lawsuit. Plaintiff has received confirmation from the Notice Administrator overseeing these settlements that its opt-out was in fact "compliant."

27. On February 26, 2024, and March 29, 2024, Judge Richard Gergel, the United States District Court Judge for the District of South Carolina overseeing the *AFFF Litigation*, entered orders of final approval on the DuPont and 3M settlements, respectively. At no time has 3M, DuPont, or any other party raised objections to Plaintiff's decision to opt-out from the settlements.

28. Leading up to the 3M and DuPont Class Action settlements, all municipalities, local governments and/or public water systems, such as Opelika Water, were enjoined from filing or prosecuting any legal action against 3M or DuPont related to PFAS contamination pending final approval orders and lifting of the stay and injunction by the Federal District Court in the *AFFF Litigation*.

## PARTIES

### I. Plaintiff Opelika Water

29. Plaintiff The Water Works Board of the City of Opelika, located in Lee County, is a public corporation organized under the laws of the State of Alabama, which operates a water system to enhance the health, safety, and general well-being of its citizens.

30. Opelika Water provides drinking water to the citizens of Opelika, Alabama, and the surrounding areas. Opelika Water owns and operates two separate water treatment plants: the R.A. Betts Plant located at 7472 Lee Road 279, Chambers County, Valley, AL 36854 and the Saugahatchee Lake Plant located at 4055 Water Street, Lee County, Opelika, Alabama 36801. Opelika Water also owns and operates two surface water intakes on the banks of Halawakee Creek/Lake Harding and Saugahatchee Lake, respectfully, that draw raw water from the river/creek/lake and pump it to the plants for treatment. Opelika Water owns these properties and enjoys riparian rights to the water from the Chattahoochee River, Lake Harding, Saugahatchee Creek, Halawakee Creek, Saugahatchee Lake, as well as property rights over the water which it draws, treats, and sells to its customers. Opelika Water also wholesales its treated water to other municipalities in Alabama, including Auburn, Beulah, and Loachapoka.

31. Opelika Water's conventional water treatment facilities are incapable of removing or treating Defendants' PFAS to levels deemed safe by the federal government.

32. Opelika Water has been and continues to be damaged due to the negligent, willful, and wanton conduct of the Defendants, as well as a result of the continuous nuisance and trespass caused by Defendants' past and present manufacture, use, purchase, sale, supply, discharge, and/or release of PFOS, PFOA and related fluorochemicals, such as PFHxS.

33. As a direct and proximate result of Defendants' conduct, Opelika Water has suffered, and will continue to suffer, substantial economic and consequential damage, including but not limited to: expenses associated with installing temporary emergency filtration and pumping systems; pilot program costs associated with permanent filtration systems capable of removing Defendants' PFAS from Opelika Water's drinking water; past and future costs associated with the purchase, installation, and operation of permanent filtration systems capable of removing Defendants' PFAS from Opelika Water's drinking water; costs associated with remediating Opelika Water's existing treatment and pumping facilities; damage to goodwill and reputation; and lost revenue and sales. In addition, Opelika Water seeks past, present, and future engineering, operating, and maintenance costs associated with remediation of Defendant's PFAS in Opelika's drinking water.

34. Opelika Water seeks compensatory and punitive damages to the fullest extent allowed by Alabama law. Opelika Water seeks compensatory damages for filtration equipment, piping, and adequate permanent facilities necessary to operate filtering systems sufficient to remove all PFAS from drinking water. Opelika Water also seeks abatement of the continuous nuisance and trespass caused by Defendants, as well as equitable and injunctive relief compelling the Defendants to remediate their contamination and prevent additional releases of PFAS and other toxic chemicals into Opelika Water's drinking water supply.

## II. Defendants

### A. Chemical Manufacturers

35. Defendant 3M Company ("3M") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in St. Paul, Minnesota. 3M has knowingly manufactured, sold, used and/or transported PFAS or products that contain

and/or degrade into PFAS in the States of Georgia and/or Alabama, which ultimately end up in the Chattahoochee River basin and Opelika Water's source water supply. PFAS manufactured, sold, used, and/or transported by 3M is currently contaminating Opelika Water's source water. Despite knowing for decades the pernicious effects of its PFAS products, 3M has and continues to conceal information and mislead regulators and the public concerning the effects of these toxic substances. 3M knew or should have known that the PFAS products it supplied would, through ordinary usage and industry custom, discharge into waterways via wastewater emissions and other releases and cause contamination in the State of Alabama, including Opelika Water's source water. As a result, 3M is causing and contributing to a continuous nuisance, trespass, and injury to Opelika Water in Lee County.

36. Defendant Daikin America, Inc. ("Daikin") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Wilmington, Delaware. Daikin is registered to do business in the State of Alabama. Upon information and belief, Daikin is a wholly owned subsidiary of Daikin Industries, Ltd. Daikin has and continues to manufacture, sell, use and/or transport PFAS and PFAS-related products or products which degrade into PFAS in the States of Georgia and/or Alabama, which ultimately end up in the Chattahoochee River basin and Opelika Water's source water supply. PFAS manufactured, sold, used, and/or transported by Daikin is currently contaminating Opelika Water's source water. Despite knowing for decades the pernicious effects of its PFAS products, Daikin has and continues to conceal information and mislead regulators and the public concerning the effects of these toxic substances. Daikin knew or should have known that the PFAS products it supplied would, through ordinary usage and industry custom, discharge into waterways via wastewater emissions and other releases and cause contamination in the State of Alabama, including Opelika Water's source water.

As a result, Daikin is causing and contributing to a continuous nuisance, trespass, and injury to Opelika Water in Lee County.

37. Defendant E.I. du Pont de Nemours and Company is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Wilmington, Delaware.

38. Defendant DuPont de Nemours, Inc. is a corporation organized under the laws of the State of Delaware. DuPont de Nemours, Inc. does business in the State of Alabama.

39. Defendant Corteva, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Indianapolis, Indiana. Corteva, Inc. is registered to do business in the State of Alabama.

40. Defendant EIDP, Inc., formerly known as "E.I. du Pont de Nemours and Company," is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Wilmington, Delaware. EIDP, Inc. is registered to do business in the State of Alabama.

41. Defendants E.I. du Pont de Nemours and Company, Dupont de Nemours, Inc., Corteva, Inc., and EIDP, Inc. are hereinafter collectively referred to as "DuPont." DuPont has manufactured, sold, used, and/or transported PFAS and PFAS-related products or products which degrade into PFAS in the States of Georgia and/or Alabama, which ultimately end up in the Chattahoochee River basin and Opelika Water's source water supply. PFAS manufactured, sold, used, and/or transported by DuPont is currently contaminating Opelika Water's source water. Despite knowing for decades the pernicious effects of its PFAS products, DuPont has and continues to conceal information and mislead regulators and the public concerning the effects of these toxic substances. DuPont knew or should have known that the PFAS products it supplied

would, through ordinary usage and industry custom, discharge into waterways via wastewater emissions and other releases and cause contamination in the State of Alabama, including Opelika Water's source water. As a result, DuPont is causing and contributing to a continuous nuisance, trespass, and injury to Opelika Water in Lee County.

42. Defendant The Chemours Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Wilmington, Delaware. The Chemours Company is registered to do business in the State of Alabama.

43. Defendant The Chemours Company FC, LLC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Wilmington, Delaware. The Chemours Company FC, LLC is registered to do business in the State of Alabama.

44. The Chemours Company and The Chemours Company FC, LLC are hereinafter collectively referred to as "Chemours." Chemours has manufactured, sold, used, and/or transported PFAS and PFAS-related products or products which degrade into PFAS into the States of Georgia and/or Alabama. PFAS manufactured, sold, used, and/or transported by Chemours is currently contaminating Opelika Water's source water. Despite knowing the pernicious effects of its PFAS products, Chemours has and continues to conceal information and mislead regulators and the public concerning the effects of these toxic substances. Chemours knew or should have known that the PFAS products it supplied would, through ordinary usage and industry custom, discharge into waterways via wastewater emissions and other releases and cause contamination in the State of Alabama, including Opelika Water's source water. As a result, Chemours is causing and contributing to a nuisance, trespass, and injury to Opelika Water in Lee County.

45. 3M, Daikin, DuPont, and Chemours are collectively referred to herein as the Chemical Manufacturer Defendants.

46. The Chemical Manufacturers have operated in the past, and/or are currently operating, manufacturing facilities related to the production of products and/or chemicals that contain or degrade into certain PFAS, including PFOS and PFOA. The Chemical Manufacturers use PFAS as part of their manufacturing processes or otherwise supply PFAS or products that contain or degrade into PFAS to various industries.

47. Defendants 3M and Daikin manufactured PFAS and/or products containing or degrading into PFAS at their plants located in Decatur, Alabama.

48. Upon information and belief, Defendants DuPont and Chemours sold PFAS and/or PFAS-containing products to Daikin at its plant located in Decatur, Alabama.

49. PFAS, and products that contain or degrade into PFOS and PFOA, are manufactured and sold by the Chemical Manufacturers to the PFAS Users and/or Fictitious Defendants F-U. These products are subsequently discharged both directly and indirectly into the Chattahoochee River, Lake Harding, Saugahatchee Creek, Halawakee Creek, Saugahatchee Lake and other tributaries and watersheds in the surrounding areas. Defendants' discharges of PFAS occur upstream of Opelika Water's drinking water intake and, as a direct result, contaminate the Opelika Water's drinking water supply.

50. The Chemical Manufacturers have known for years that PFAS are harmful to human health and resistant to degradation or filtration by conventional treatment systems. The Chemical Manufacturers had full knowledge that the PFAS they manufactured and supplied to industrial users would invade waters of the state of Alabama, including the environment and

surrounding areas from where Opelika Water collects its drinking water, via wastewater effluent and other discharges and ultimately contaminate Opelika Water's drinking water supply.

51. The "heart" and "gravamen" of Plaintiff's claims against the Chemical Manufacturers is this: these Defendants produced and supplied commercial PFAS-containing products to private industries, with full knowledge that these persistent, bioaccumulative, and toxic substances would contaminate the environment and Plaintiff's source water through wastewater and other manufacturing discharges, all while concealing and withholding critical information regarding the harmful effects of their products.

52. The Chemical Manufacturers have caused and contributed, and are still causing and contributing to, a continuous nuisance and trespass through their past and present manufacture, use, purchase, sale, supply, discharge, and/or release of PFAS and products that contain or degrade into PFAS, as well as their continuing efforts to conceal information related to their products and mislead regulators and the public concerning the pernicious effects of these substances.

**B. PFAS Users**

53. Defendant Chromalloy Gas Turbine, LLC ("Chromalloy") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Palm Gardens, Florida. Chromalloy is registered to do business in the State of Alabama. Chromalloy operates a gas turbine engine component repair and manufacturing facility located at 1664 W Lukken Industrial Drive, LaGrange, Georgia 30240. Chromalloy's manufacturing operations include thermal coating, surface preparation, and component fabrication and repair. Upon information and belief, Chromalloy has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Chromalloy's manufacturing processes have caused and are continuing to cause

discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, Chromalloy is causing and contributing to a nuisance, trespass, and injury to Opelika Water in Lee County.

54. Defendant Duracell Manufacturing LLC ("Duracell"), formerly Duracell Manufacturing, Inc. is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Chicago, Illinois. Duracell does business in the State of Alabama. Duracell owns and operates and/or formerly owned and operated battery manufacturing facilities and/or other buildings located at 1567 W Lukken Industrial Drive; 1512 Redding Drive, LaGrange, Georgia 30240; 1513 Redding Drive, LaGrange, Georgia 30240; and 1514 Redding Drive, LaGrange, Georgia 30240. Upon information and belief, Duracell has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Duracell's manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, Duracell is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

55. Defendant Freudenberg-NOK General Partnership ("Freudenberg-NOK") is a general partnership organized and existing under the laws of the State of Delaware, with its principal place of business located in Plymouth, Michigan. Freudenberg-NOK does business in the State of Alabama. Freudenberg-NOK operates a rubber manufacturing facility at 1618 W Lukken Industrial Drive, LaGrange, Georgia 30240. Upon information and belief, Freudenberg-NOK has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Freudenberg-NOK manufacturing processes have caused and are continuing to cause discharges of PFAS-

contaminated wastewater upstream of Opelika Water's drinking water source. As a result, Freudenberg-NOK is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

56. Defendant Henkel US Operations Corporation ("Henkel"), formerly Henkel Corporation, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Rocky Hill, Connecticut. Henkel is registered to do business in the State of Alabama. Henkel operates an adhesives and sealants manufacturing facility at 1600 Executive Dr, LaGrange, GA 30240. Upon information and belief, Henkel has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Henkel's manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, Henkel is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

57. Defendant Interface, Inc. is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located in Atlanta, Georgia. Interface, Inc. does business in the State of Alabama.

58. Defendant InterfaceFLOR, LLC is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business located in Atlanta, Georgia. InterfaceFLOR, LLC does business in the State of Alabama.

59. Interface, Inc. and InterfaceFLOR, LLC are hereinafter referred to as "Interface." Interface currently operates and/or formerly operated commercial flooring and carpet manufacturing facilities at 1503 Orchard Hill Rd, LaGrange, Georgia 30240 ("Kyle 1 Plant"); 140 Glen Long Drive, LaGrange, Georgia 30241 ("Kyle 2 Plant"); 1500 Orchard Hill Rd, LaGrange,

Georgia 30240 (“Kyle 3 Plant”); 1603 Executive Drive, LaGrange, Georgia 30240 (“Graham Scott Technical Center”); 1200 O G Skinner Dr, West Point, Georgia 31833 ("RCA Plant”); and 1707 Shorewood Dr, LaGrange, Georgia 30240. Upon information and belief, Interface has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Interface’s manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water’s drinking water source. As a result, Interface is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

60. Defendant JFA LLC (“Jindal”), formerly known as “Jindal Films Americas LLC,” is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Shawnee, Oklahoma. Jindal does business in the State of Alabama. Jindal formerly operated a films, packaging, and labeling manufacturing facility located at 411 Pegasus Pkwy, Lagrange, Georgia, 30240. PFAS is commonly used in manufacturing processes involving film, packaging, and labeling. Upon information and belief, Jindal has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Jindal’s manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water’s drinking water source. As a result, Jindal is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

61. Defendant Kimberly-Clark Corporation (“Kimberly-Clark”) is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at Irving, Texas. Kimberly-Clark is authorized to transact business in the State of Alabama. Kimberly-Clark operates a textile manufacturing facility at 1300 Orchard Hill Rd, LaGrange,

Georgia 30240. Upon information and belief, Kimberly-Clark has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Kimberly-Clark's manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, Kimberly-Clark is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

62. Defendant Kleen-Tex Industries, Inc. is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located in Atlanta, Georgia. Kleen-Tex Industries, Inc. does business in the State of Alabama.

63. Defendant Kleen-Tex USA, LLC is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located in Atlanta, Georgia. Kleen-Tex USA, LLC does business in the State of Alabama.

64. Defendants Kleen-Tex Industries, Inc. and Kleen-Tex USA, LLC are hereinafter referred to as "Kleen-Tex." Kleen-Tex currently operates and/or formerly operated washable mat manufacturing facilities located at 210 Lukken Industrial Dr E, LaGrange, Georgia 30241; 1602 Orchard Hill Rd, LaGrange, Georgia 30240; and 1516 Orchard Hill Rd, LaGrange, Georgia 30240. Upon information and belief, Kleen-Tex has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Kleen-Tex's manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, Kleen-Tex is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

65. Defendant Milliken & Company ("Milliken") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Spartanburg, South Carolina. Milliken does business in the State of Alabama. Milliken currently conducts textile manufacturing operations at numerous locations in LaGrange, Georgia such as the Live Oak Plant at 300 Lukken Industrial Drive West, LaGrange, Georgia 30240; the Valway Plant at 1300 4th Avenue, LaGrange, Georgia 30240; the Duncan Stewart/DMS Plant at 714 Stewart Road, LaGrange, Georgia 30241; the Hillside Coating Plant at 1300 Brownwood Avenue, LaGrange, Georgia 30240; and an office/laboratory at 201 Lukken Industrial Drive, LaGrange, Georgia 30240. Upon information and belief, Milliken formerly operated the Elm City Plant at 1005 Elm Street, LaGrange, Georgia 30240 and the Kex Plant at 815 Leeman Street, LaGrange, Georgia 30240. Upon information and belief, Milliken has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Milliken's manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, Milliken is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

66. Defendant M+A Matting, LLC ("M+A"), formerly known as "MMI Andersen Company, LLC," is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business located in LaGrange, Georgia. M+A does business in the State of Alabama.

67. Defendant Mountville Mills, Inc. is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located in LaGrange, Georgia. Mountville Mills does business in the State of Alabama.

68. Defendant Mountville Mills International, LLC is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business located in LaGrange, Georgia. Mountville Mills International, LLC does business in the State of Alabama.

69. Defendant Mountville Mills Rubber Company, LLC is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business located in LaGrange, Georgia. Mountville Mills Rubber Company, LLC does business in the State of Alabama.

70. Defendant Mountville Mills - THE MATWORKS, LLC is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business located in LaGrange, Georgia. Mountville Mills - THE MATWORKS, LLC does business in the State of Alabama.

71. Defendants M+A, Mountville Mills, Inc., Mountville Mills International, LLC, Mountville Mills Rubber Company, LLC, and Mountville Mills - THE MATWORKS, LLC are hereinafter referred to as “Mountville Mills.” Mountville Mills operates a textile mill located at 1729 South Davis Road, LaGrange, Georgia, 30241; a rubber product manufacturing plant located at 1602 Orchard Hill Rd, LaGrange, Georgia 30240; and a mat manufacturing facility located at 1516 Orchard Hill Rd, LaGrange, Georgia 30240. Upon information and belief, Mountville Mills acquired Kleen-Tex’s North American Mat Division in 2008, and M+A acquired Milliken’s North American and European mat businesses in 2022. Upon information and belief, Mountville Mills has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Mountville Mill’s manufacturing processes have caused and are continuing to cause discharges of PFAS-

contaminated wastewater upstream of Opelika Water's drinking water source. As a result, Mountville Mills is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

72. Defendant Specialty Fabrics & Converting, Inc. ("Specialty Fabrics") was a corporation organized and formally existing under the laws of the State of Delaware, with its principal place of business located in Hogansville, Georgia. Specialty Fabrics does business in the State of Alabama.

73. Defendant ContiTech USA, LLC ("ContiTech") is a limited liability company organized and existing under the laws of the State of Delaware, with its North American headquarters in Fairlawn, Ohio. ContiTech is registered to do business in the State of Alabama.

74. Defendants Specialty Fabrics and ContiTech are hereinafter referred to as "Specialty Fabrics." Industrial Specialty Fabrics formerly operated an industrial fabric manufacturing facility located at 117 Corinth Road, Hogansville, Georgia 30230. Upon information and belief, Veyance Technologies, Inc. ("Veyance") purchased the assets of Industrial Specialty Fabrics and renamed the fabric operation, "Specialty Fabrics & Converting, Inc.," in 2007. In 2015, Continental AG ("Continental") acquired Veyance, integrating its operations into Continental's ContiTech division. Upon information and belief, Specialty Fabrics has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and Specialty Fabric's manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, Specialty Fabrics is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

75. Defendant West Point Foundry and Machine Company ("West Point Industries"), doing business as "West Point Industries", is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located in West Point, Georgia. West Point Industries does business in the State of Alabama. West Point Industries operates a casting, fabrication, and machining facility located at 2021 Stateline Road, West Point, Georgia 31833. Upon information and belief, West Point Industries has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and West Point Industries' manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, West Point Industries is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

76. Defendant WestPoint Home LLC ("WestPoint Home") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in New York, New York. WestPoint Home is registered to do business in the State of Alabama. WestPoint was formerly known as "WestPoint Home, Inc.," which was the result of mergers of three textile companies: J.P. Stevens & Co., Inc., Pepperell Manufacturing Company, and West Point Manufacturing Company. WestPoint Home currently operates an outlet store located at 523 Fob James Dr, Valley, Alabama 36854, which is not currently believed to be contributing to the contamination of Plaintiff's source water supply. Upon information and belief, WestPoint Home formerly operated several textile manufacturing facilities in or around LaGrange, Georgia; Valley, Alabama; and Opelika, Alabama. Upon information and belief, WestPoint Home has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and WestPoint Home's

manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, WestPoint Home is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

77. Defendant WestRock Packaging Systems, LLC ("WestRock") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Sandy Springs, Georgia. WestRock is registered to do business in the State of Alabama. WestRock operates a folding carton packaging facility located at 3500 45th St SW, Lanett, Alabama 36863. WestRock also operates a distribution center located at 1479 Valley Industrial Drive Valley, Alabama, 36854, which is not currently believed to be contributing to the contamination of Plaintiff's source water supply. Folding carton packaging processes are known to use PFAS to make materials grease-proof and water-resistant. Upon information and belief, WestRock has purchased PFAS and/or PFAS-containing products from the Chemical Manufacturers and/or Fictitious Defendants A-E for use in its manufacturing processes, and West Rock's manufacturing processes have caused and are continuing to cause discharges of PFAS-contaminated wastewater upstream of Opelika Water's drinking water source. As a result, WestRock is causing and contributing to a nuisance, trespass, and injury to Plaintiff in Lee County.

78. The PFAS Users have in the past and/or currently own and/or operate manufacturing facilities related to the carpet, coating, flooring, textile, metal fabrication, and paper industries, which have in the past and/or currently use PFAS in their manufacturing processes. These facilities are located upstream of Opelika Water's drinking water intake located at Halawakee Creek.

79. Industrial wastewater discharged in the past and currently from the PFAS Users' manufacturing facilities contains high levels of PFAS, which have invaded the environment where Opelika Water collects its drinking water. In addition to discharging PFAS in industrial wastewater, the PFAS Users have also discharged—and are continuing to discharge—PFAS by way of releases, leaks, and spills into stormwater drains which feed into local creeks, waterways, streams, rivers and groundwater.

80. The PFAS Users knew or should have known that PFAS are harmful to human health and the environment, and that their PFAS-contaminated waste streams would invade and persist in the environment and Opelika Water's drinking water supply.

81. The PFAS Users have known or should have known that the release of PFAS into the environment through wastewater, stormwater and other discharges is prohibited by the PFAS Users' operative permits and/or applicable state and local laws and regulations.

82. The PFAS Users have caused and contributed, and are still causing and contributing, to a continuous nuisance and trespass through their past and present manufacture, use, purchase, sale, supply, discharge, and/or release of PFAS and products containing or degrading into PFAS.

**C. Landfill Defendants**

83. Defendant Waste Away Group, Inc. ("WAG") is a domestic corporation organized under the laws of the State of Alabama. WAG owns and/or operates the Salem Landfill located at 4210 Lee Road 183, Opelika, Alabama 36804.

84. Defendant Waste Management, Inc. ("WM") is a corporation organized under the laws of the State of Delaware and does business in the State of Alabama. WM owns, operates and/or maintains the Salem Landfill.

85. The Salem Landfill accepts industrial waste, wastewater, biosolids, sludge, and other forms of waste that contain and/or degrade into PFAS. Through its unauthorized direct and indirect discharge of wastewater, stormwater, and/or leachate contaminated with PFAS, the Salem Landfill is causing and contributing to a nuisance, trespass, and injury in Lee County, Alabama.

86. The Landfill Defendants own, operate and/or maintain the Salem Landfill, which has accepted PFAS-contaminated wastes from the PFAS Users and other sources and thereafter improperly discharged PFAS-contaminated leachate into an unnamed tributary to Halawakee Creek directly and/or via leachate disposal into wastewater treatment plants. The Landfill Defendants are not permitted or authorized to discharge leachate contaminated with PFAS, and knew or should have known that their discharges of PFAS-contaminated leachate would invade Opelika Water's source of drinking water. In some instances, these discharges began over thirty (30) years ago and yet continue to this day.

87. The Landfill Defendants' continuing discharges of PFAS occur upstream of Plaintiff's drinking water intake and, as a direct result, contaminate the Plaintiff's water supply.

**D. Fictitious Defendants**

88. Fictitious Defendants A-E, whether singular or plural, entity or entities, are those defendants who have operated in the past, and/or are currently operating, manufacturing facilities related to the production of products and/or chemicals that contain or degrade into certain PFAS chemicals, including PFOS and PFOA, and that have sold PFAS and/or products that contain or degrade into PFAS, to the PFAS Users and/or Fictitious Defendants F-U, which are subsequently discharged both directly and indirectly into the Chattahoochee River, Lake Harding, Saugahatchee Creek, Halawakee Creek, Saugahatchee Lake and other tributaries and watersheds in the

surrounding areas, upstream of Plaintiff's drinking water intake and, as a direct result, contaminate the Plaintiff's water, similar to the Chemical Manufacturers in Section II.A.

89. Fictitious Defendants F-U, whether singular or plural, entity or entities, are those defendants who have owned and/or operated in the past, and/or currently own and/or operate, manufacturing facilities or related properties which have purchased, used and/or utilized PFAS in their manufacturing processes and discharged wastewater containing PFAS into the environment and/or surface water source(s) where Plaintiff collects its drinking water, whether directly or indirectly, similar to the PFAS Users in Section II.B. Fictitious Defendants F-U also include those defendants who have discharged and/or continue to discharge PFAS from manufacturing facilities or related properties by way of releases, leaks, and spills into stormwater drains which feed into local creeks, waterways, streams, rivers and groundwater and contaminate Plaintiff's drinking water supply.

90. Fictitious Defendants V-Z, whether singular or plural, entity or entities, are those defendants who owned, operated and/or maintained, and/or currently own, operate and/or maintain, a landfill or other waste disposal facility/site that has accepted PFAS-contaminated wastes from the PFAS Users and/or other sources (including Fictitious Defendants F-U) and thereafter discharged PFAS-contaminated wastewater, stormwater and/or leachate, directly or indirectly, into the water source(s) where Plaintiff collects its drinking water and ultimately contaminate Plaintiff's drinking water supply, similar to the Landfill Defendants in Section II.C.

91. Plaintiff avers that the identities of Fictitious Defendants A-Z are otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff, their identities as proper party defendants are not known to Plaintiff at this time and/or their actions/omissions as liable

parties are not known to Plaintiff at this time, and their true names will be substituted by amendment when ascertained.

**E. All Defendants**

92. The PFAS manufactured and sold by the Chemical Manufacturers, purchased, used, and discharged by the PFAS Users, and/or accepted and subsequently discharged by the Salem Landfill, resist degradation, including during processing at wastewater treatment facilities, and ultimately contaminate Halawakee Creek, Lake Harding and other tributaries and watersheds in Lee County, Alabama.

93. Defendants, individually and collectively, have caused or contributed to cause continuous PFAS pollution in the environment and the surface water in and around Lee County and Chambers County, Alabama. Defendants' PFAS cannot be adequately removed from the Plaintiff's water supply by existing water treatment processes and technologies presently in use and available at Plaintiff's water treatment facilities.

## FACTUAL ALLEGATIONS

**I. Defendants Have Known for Decades That "Long-Chain" PFAS are a Threat to Human Health and the Environment.**

94. PFAS are man-made, synthetic chemicals used to impart oil-, water-, and stain-resistance to various products, including carpet, paper, and textiles. The same chemical properties that provide enhanced soil-resistant attributes also make PFAS resistant to degradation and persistent in the environment.

95. PFAS are known to the EPA and the Defendants as "forever chemicals" because these man-made chemicals persist in the environment for extremely long periods and do not degrade like other chemicals. PFAS accumulate in the human body through the process of bioaccumulation. In fish and mammals, PFAS accumulate, build, and increase though

biomagnification. PFAS also migrate through surface water and groundwater, allowing PFAS compounds to travel long distances while causing extensive contamination.

96. Since PFAS do not degrade naturally and are synthetic "forever chemicals," PFAS released into the environment ten (10), twenty (20), or thirty (30) years ago will remain present and will continue causing pollution that is a threat to public health, unless removed by very specific filtration methods.

97. Although there are thousands of chemical substances that fall under the PFAS umbrella, the two most notorious PFAS chemicals are perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA"). These two (2) chemicals are also referred to as C-8s and/or long-chain fluorochemicals.

98. PFOS and PFOA are considered "long-chain" PFAS (sometimes referred to as "C-8" chemistries), because they contain eight (8) fluorinated carbon atoms. Defendants knew that, because of the strong carbon-fluorine bond, PFOS and PFOA will not degrade naturally in the environment.

99. According to the EPA, 3M was the sole manufacturer of PFOS in the United States and the principal manufacturer of PFOS worldwide. Upon information and belief, 3M supplied PFOS and/or products containing or degrading into PFOS to the PFAS Users for use in their manufacturing processes.

100. DuPont, Daikin, and 3M all manufactured PFOA and/or products containing or degrading into PFOA. Upon information and belief, DuPont, Daikin, and 3M supplied PFOA and/or products containing or degrading into PFOA to the PFAS Users for use in their manufacturing processes.

101. 3M and DuPont began studying the toxicity of PFOS and PFOA as early as the 1950s and 1960s.

102. By the 1970s, 3M and DuPont were aware that their products persisted indefinitely in the environment. 3M also learned during this time that PFOS was present in the blood of its employees and the general public.

103. In the 1970s and 1980s, 3M began conducting animal studies to determine the possible carcinogenicity of PFAS chemicals. One such study, an investigation into the effects of PFOS on rhesus monkeys, had to be aborted prior to the conclusion of the study "[b]ecause of unexpected early mortalities in all monkeys at all levels" of PFOS dosage. In 1978, a 3M interoffice correspondence concluded that "[r]ecent animal studies have shown that FC-95 [PFOS] is more toxic than was previously believed."

104. By the 1980s and 1990s, 3M and DuPont were fully aware that PFOS and PFOA were toxic and persistent in the environment and that conventional treatment methods were ineffective at removing these pollutants. Nevertheless, the two companies actively hid their findings from regulators and the general public. In 1988, a 3M internal memo raised concerns that 3M had "perpetuate[d] the myth that these fluorochemical surfactants are biodegradable."

105. In 1997, 3M prepared a Material Safety Data Sheet (MSDS) for a product containing PFAS. The MSDS contained the following warning:

> CANCER:
> WARNING: Contains a chemical which can cause cancer. (3825-26-1)
> (1983 and 1993 studies conducted jointly by 3M and DuPont).

106. This warning was removed from subsequent MSDSs.

107. In the late 1990s, 3M began a comprehensive, multi-city investigation into the extent of its PFAS pollution. It found an unending cycle of pollution in which Chemical

Manufacturers, PFAS Users, and Landfills all play a role in continuing the invasion of PFAS in surface and groundwater, wastewater, and ultimately, drinking water.

108. 3M also concluded during this investigation that reverse osmosis is the only treatment method capable of removing all PFAS.

109. In 1999, Richard Purdy, one of 3M's lead scientists on the multi-city study, resigned from his position due to his "profound disappointment in 3M's handling of the environmental risks associated with the manufacture and use of perfluorinated sulfonates (PFOS) . . . and its precursors."

110. Mr. Purdy's letter, which was also sent to a representative of the EPA, further stated that PFOS "is the most insidious pollutant since PCB" and "more stable than many rocks."

111. Following Mr. Purdy's letter, the EPA began an investigation into PFOS after receiving data that "PFOS was persistent, unexpectedly toxic, and bioaccumulative (PBT)." Federal Register/Vol. 68, 2003.

112. During its subsequent investigation of 3M, the EPA disclosed that "following negotiations with EPA, 3M . . . announced that it will voluntarily phase out perfluorooctanyl sulfonate ("PFOS") chemistry." The EPA determined that PFOS was toxic and accumulated to a high degree in humans and animals. The EPA's preliminary risk assessment found unacceptable margins of exposure for workers and possibly the general population exposed to PFOS.

113. The EPA concluded that "PFOS represents an unacceptable technology that should be eliminated to protect human health and the environment from potentially severe long-term consequences." Shortly thereafter, the EPA expanded its investigation to perfluorooctanoic acid (PFOA), stating "EPA was concerned in part because 3M had also found PFOA in human blood during the studies on PFOS."

114. After 3M announced that it was withdrawing PFOS and PFOA from the market in 2000, DuPont and Daikin continued to manufacture and/or use PFOA with full knowledge that the substances had been withdrawn by 3M due to environmental and potential health risks to the public.

115. Upon information and belief, the PFAS Users continued to purchase, use, and discharge PFOA and products containing or degrading into PFOA with full knowledge that the substances had been withdrawn by 3M due to environmental and potential health risks to the public.

116. By 2006, the majority of an EPA Science Advisory Board expert committee had recommended that PFOA be considered "likely to be carcinogenic to humans." Similarly, an independent C-8 Science Panel identified kidney cancer and testicular cancer as having a "probable link" to PFOA exposure, based on epidemiological and other data in the Mid-Ohio Valley.

117. Despite the growing awareness that PFOA was just as persistent, bio-accumulative, and toxic as PFOS, DuPont and Daikin continued to manufacture and supply PFOA and products containing and/or degrading into PFOA until at least 2015.

118. All of the Defendants have known that PFOS and PFOA are toxic, persistent, and bioaccumulative.

119. All of the Defendants have known or should have known that the ordinary usage of products containing or degrading to PFAS in manufacturing processes will cause PFAS to discharge into the environment via industrial wastewater effluent, stormwater runoff or other discharges.

120. All of the Defendants have known that permits and/or state and local laws and regulations prevent the discharge of PFAS into conventional wastewater treatment plants incapable of removing or treating PFAS.

121. All of the Defendants have known that the PFAS products used by the PFAS Users would ultimately enter the Plaintiff's drinking water supply, and that Plaintiff's conventional drinking water treatment systems are incapable of removing PFOS and PFOA from water supplies.

122. Nevertheless, the Defendants in this case supplied, used, purchased, and/or accepted PFOS and PFOA, and/or products containing or degrading into PFOS and PFOA, without using adequate care to prevent the contamination of Plaintiff's water supply.

123. PFAS manufactured, used, and discharged by the Defendants are still present at dangerously high levels in Plaintiff's drinking water supply. Some of these Defendants are still discharging wastewater, leachate, stormwater and/or other types of discharges containing PFAS into the Plaintiff's water supply.

## II. "Short-Chain" PFAS

124. After 3M phased out "long-chain" PFAS, it began selling "short-chain" PFAS compounds (sometimes referred to as "C-6" and "C-4" chemistries), and/or products that contained or degraded into "short-chain" PFAS, to the PFAS Users. DuPont and Daikin eventually converted to "short-chain" PFAS as well.

125. In or around 2015, DuPont spun off its Performance Chemicals business line into a new company, Chemours, which continued selling and marketing "short-chain" PFAS, including but not limited to HFPO-DA (or "Gen-X").

126. The "short-chain" PFAS compounds sold and/or used by the Chemical Manufacturers included and/or degraded into PFBS, PFBA, PFHxA, PFHxS, PFNA, PFPeA, Gen-X, and more.

127. Defendants knew or should have known that that these "short-chain" PFAS compounds were just as toxic, persistent, and bioaccumulative as their "long-chain" predecessors. Defendants also knew or should have known that conventional drinking water treatment systems are incapable of removing "short-chain" PFAS from water supplies. Nevertheless, Defendants supplied, used, purchased, and/or accepted "short-chain" PFAS, and/or products containing or degrading into "short-chain" PFAS, without using adequate care to prevent the contamination of Plaintiff's water supply.

128. Some short-chain PFAS actually contain PFOA (a toxic C-8 chemical) as a byproduct and/or an impurity. So, while advertising their short-chain PFAS as an alternative to long-chain C-8s, the Chemical Manufacturers were continuing to manufacture and sell their most toxic chemicals to customers and, in turn, putting these chemicals into waste streams and the environment.

129. Upon information and belief, Defendants continue to supply, use, purchase, accept, and/or discharge "short-chain" PFAS, and/or products containing or degrading into "short-chain" PFAS, without using adequate care to prevent the contamination of Plaintiff's water supply, to this day.

## III. "End-of-Life" PFAS Management

130. According to the EPA, Subtitle D (Municipal Solid Waste) landfills represent significant sources of PFAS to the environment, particularly those landfills that accept "special

waste" containing higher concentrations of PFAS, such as wastewater sludge or manufacturing waste.

131. Because of these concerns, the EPA officially recommends disposal of PFAS waste at Subtitle C (Hazardous Waste) landfills, particularly when the levels of PFAS in landfill waste are relatively high. Subtitle C landfills are subject to more stringent containment requirements than traditional Subtitle D landfills.

132. The Salem Landfill is a Subtitle D landfill that accepts both regular household waste and PFAS-containing special waste from industrial manufacturing facilities. Upon information and belief, the Salem Landfill also accepts, or has accepted in the past, wastewater treatment plant sludge that contains PFAS.

133. Leachate is a form of liquid waste present in Subtitle D landfills, like the Salem Landfill. According to the EPA, leachate forms when rainwater percolates through landfill wastes, leaching chemicals or constituents from those wastes. In essence, landfill leachate takes on the chemical characteristics of the landfill waste that it passes through.

134. Landfill leachate is typically either treated on-site or shipped off-site to a municipal wastewater treatment plant for treatment.

135. When rainwater comes into contact with the PFAS-containing waste within the Salem Landfill, it generates PFAS-contaminated leachate. Upon information and belief, the Salem Landfill's leachate contains high levels of PFAS, including PFOS and PFOA.

136. The Salem Landfill discharges its PFAS-contaminated leachate directly into an unnamed tributary to Halawakee Creek, in violation of its applicable permits, and/or via leachate disposal into wastewater treatment plants.

137. The Landfill Defendants have known for years that industrial wastes containing PFAS can contaminate both on-site and off-site groundwater and surface water.

138. The presence of PFAS in landfill waste—and, as a result, landfill leachate, groundwater and surface water—has been widely reported on in newspapers, trade publications, and scholarly reports for more than a decade.

139. Likewise, solid waste industry groups, such as the Solid Waste Association of North America, have for years published reports to the solid waste industry that conventional wastewater treatment plants are incapable of removing PFAS from leachate and that reverse osmosis and granular activated carbon are commercially-proven options for leachate PFAS removal.

140. The Landfill Defendants hold themselves out as experts in PFAS disposal and management, with on-site pretreatment options, Subtitle C Hazardous Landfills, and other technologies capable of limiting the re-introduction of PFAS into the environment.

141. Despite the Landfill Defendants' knowledge concerning the potential for PFAS-contaminated landfill leachate to harm the environment and public health, the Landfill Defendants have failed to prevent the escape and discharge of PFAS-contaminated leachate from its landfill, in violation of its permits.

142. The Landfill Defendants have known, or should have known, for years that they cannot prevent the escape and discharge of PFAS-contaminated leachate into the environment, yet the Salem Landfill continues to this day to accept PFAS-contaminated special waste.

## IV. PFAS Regulations

143. In May of 2016, EPA published a Lifetime Health Advisory for drinking water setting the levels at 70 ppt *combined* for PFOA and PFOS. This Health Advisory was based on "studies of the effects of PFOA and PFOS on laboratory animals" and "epidemiological studies to human populations" which "indicate that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."

144. In March 2023, EPA proposed a National Primary Drinking Water Regulation ("NPDWR") to establish legally enforceable Maximum Contaminant Levels ("MCLs") for six PFAS in drinking water: PFOA, PFOS, PFBS, PFNA, PFHxS, and Gen-X.

145. On April 10, 2024, EPA announced the final, enforceable NPDWR for these six PFAS.

146. Under the NPDWR, public water systems, like Plaintiff's, will be required to monitor and report concentrations of PFAS in their drinking water. The NPDWR will also require public water systems to provide drinking water with no more than 4 ppt PFOS, 4 ppt PFOA, 10 ppt PFHxS, 10 ppt PFNA, or 10 ppt Gen-X.

147. Moreover, the NPDWR will require that public water systems, like Plaintiff's, remove PFBS, PFNA, PFHxS, and Gen-X from their drinking water pursuant to a Hazard Index. Under this Hazard Index, *combined* concentrations of these compounds can constitute a violation even where each *individual* compound is lower than the MCL. By way of example, drinking water

with 9 ppt Gen-X, 100 ppt PFBS, 4 ppt PFNA, and 3 ppt PFHxS would constitute a violation of the Hazard Index even though each individual concentration is below the MCL.

148. In announcing the new regulations, EPA stated that it "expects that over many years the final rule will prevent PFAS exposure in drinking water for approximately 100 million people, prevent thousands of deaths, and reduce tens of thousands of serious PFAS-attributable illnesses." Pursuant to the NPDWR, EPA also established "health-based" Maximum Contaminant Level Goals ("MCLGs") for PFOA and PFOS at zero ppt.

149. The EPA explained the decision-making process behind the MCLGs: "Following a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe."

150. Finally, on April 19, 2024, the EPA formally designated PFOA and PFOS as "Hazardous Substances" under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERLCA"). According to the EPA, the designation of PFOA and PFOS as "Hazardous Substances" under CERCLA "is designed to ensure that those responsible for contamination pay to clean it up."

## V. Fate and Transport

151. All of the Defendants have caused or contributed to the PFAS in the Chattahoochee River basin, Halawakee Creek, and Plaintiff's source water supply.

152. Upon information and belief, the following Defendants have manufactured, formulated, sold, supplied and/or transported PFAS and/or PFAS-containing products to PFAS Users that were ultimately discharged, directly or indirectly, into Plaintiff's water supply: 3M, Chemours, Daikin, DuPont and/or Fictitious Defendants A-E.

153. Upon information and belief, the following Defendants have directly discharged, whether through an NPDES permit or otherwise, PFAS and/or wastewater containing PFAS into the Chattahoochee River basin and Plaintiff's source water supply: Kimberly-Clark, Milliken, Specialty Fabrics, WestRock, and/or Fictitious Defendants F-U.

154. Upon information and belief, the following Defendants have discharged PFAS and/or wastewater containing PFAS to the City of LaGrange, which passed through the wastewater treatment system and into the Chattahoochee River basin, Halawakee Creek, and Plaintiff's source water supply: Chromalloy, Duracell, Freudenberg NOK, Interface, Jindal, Kimberly-Clark, Kleen-Tex, Milliken, Mountville Mills, WestPoint Home, and/or Fictitious Defendants F-U.

## VI. PFAS POLLUTION IN AND AROUND PLAINTIFF'S WATER SUPPLY

155. Plaintiff draws its primary source water from Halawakee Creek, which is on Lake Harding, and is treated at the Robert A. Betts Water Treatment Plant ("RA Betts WTP"). Lake Harding and Halawakee Creek are part of the Chattahoochee River basin. Plaintiff also has a secondary water supply at Saugahatchee Lake ("Saugahatchee WTP").

156. PFAS pollution caused by the Defendants has jeopardized the safety of the Plaintiffs' raw water and drinking water sources and related tributaries and watersheds as an ongoing source of drinking water for the residents of Lee County, Alabama, and the surrounding areas.

157. Upstream from Opelika Water's RA Betts WTP drinking water intake, the PFAS Users operate manufacturing facilities that in the past and/or currently discharge PFAS into the Chattahoochee River directly and/or via PFAS-contaminated industrial wastewater discharges to wastewater treatment plants incapable of removing PFAS. These PFAS were in the past, and in some cases still today, manufactured and sold by the Chemical Manufacturers.

158. WAG and/or WM own, operate and maintain the Salem Landfill that has accepted PFAS-contaminated wastes from the PFAS Users and other sources and thereafter discharged PFAS-contaminated leachate into an unnamed tributary to Halawakee Creek directly and/or via leachate disposal into wastewater treatment plants. In some instances, the discharges began over thirty (30) years ago and yet continue to this day.

159. Defendants have known or should have known that PFAS cannot be removed by conventional wastewater treatment methods and that the Defendants' PFAS-contaminated wastewater passes directly through the wastewater treatment system and back into the aforementioned waterways upstream of Opelika Water's drinking water intake.

160. As a result of Defendants' manufacture, use, disposal, and discharge of PFAS and/or products and waste that contain or degrade into PFAS, dangerously high levels of PFAS have been detected in the waterways surrounding Plaintiff's drinking water intakes and related tributaries and watersheds. The levels of PFAS detected far exceed EPA's most recent Health Advisory and proposed Maximum Contaminant Levels and Maximum Contaminant Level Goals.

161. Levels of PFOS and PFOA have been detected at the R.A. Betts Plant as high as 8.4 ppt and 13.0 ppt, respectively.

162. PFOS and PFOA have also been detected at the Saugahatchee WTP.

163. Short-chain PFAS have also been detected at both of Plaintiff's Water Treatment Plants, including PFHxS at RA Betts WTP.

164. Because of their persistence and bioaccumulation, PFAS discharged into the waterways that supply Plaintiff's drinking water five (5), ten (10), or even twenty (20) years ago are still present in Plaintiff's water supply and still impacting Plaintiff's ability to provide clean drinking water to its customers. These "forever chemicals" will continue to pollute Plaintiff's

water supply for generations to come—unless and until they are removed through very specific filtration methods.

165. Scientific experts, including several of the Defendants' own scientists and consultants, agree that PFOS and PFOA do not readily degrade and will remain in the environment for centuries.

166. Because Plaintiff's water treatment plants, like most water treatment plants in the country, are incapable of removing PFAS, Plaintiff's raw and finished water both contain levels of "forever chemicals" much higher than that which is allowed by EPA under the 2022 Health Advisory and the 2024 National Primary Drinking Water Regulation.

## COUNT I – NEGLIGENCE

167. Plaintiff incorporates all prior paragraphs by reference as if fully set forth and restated herein.

168. Defendants owe a duty to Plaintiff to exercise reasonable care in their manufacturing procedures and waste-handling and disposal operations to prevent the PFAS contamination of the Plaintiff's water supply and water treatment system and related property.

169. As described in detail above, Defendants have breached their duty to exercise due care and reasonable care owed to Plaintiff. The Defendants' breaches of their duties to Plaintiff constitute negligent, willful, and/or reckless conduct.

170. As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, and omissions, Plaintiff has been damaged and has incurred expenses and will continue to incur expenses in the future.

WHEREFORE, Plaintiff demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by struck jury in an amount in

excess of the jurisdictional minimum of this Court, including past and future damages, plus interest in all recoverable costs.

## COUNT II – PUBLIC NUISANCE

171. Plaintiff realleges all prior paragraphs as if fully restated and set forth herein.

172. Defendants have created and continue to create and contribute to a public nuisance by failing to prevent the contamination of the surface water where Plaintiff obtains its drinking water and, as a direct result, Plaintiff's water supply, water treatment system, and related property with Defendants' PFAS, thereby causing Plaintiff hurt, inconvenience, and harm. The nuisance is ongoing.

173. The contamination of Plaintiff's water supply, water treatment system, and related property constitutes a public nuisance, which is causing Plaintiff damages that are separate and distinct from those faced by the general public, including but not limited to: expenses associated with installing, maintaining, and operating filtration systems; costs associated with remediating Plaintiff's existing treatment facilities; damage to goodwill and reputation; and lost revenue and sales.

174. In addition to the special damages suffered by Plaintiff, the Defendants' PFAS contamination has created a condition that threatens the health and well-being of residents of Opelika and Lee County, Alabama, including Plaintiff's customers.

175. It was reasonably foreseeable, and in fact known to Defendants, that their actions would contaminate, and have contaminated, the water at Plaintiff's groundwater wells. The nuisance has caused substantial damage and will continue to cause damages until Plaintiff receives compensatory damages for the necessary improvements of filtration technology that will allow for the removal of PFAS from Plaintiff's water supply.

WHEREFORE, Plaintiff demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.

**COUNT III – PRIVATE NUISANCE**

176. Plaintiff re-alleges all prior paragraphs as if set forth fully herein.

177. Defendants have created and are continuing to create and contribute to a nuisance by their failure to prevent the contamination of PFAS in the Plaintiff's water supply, thereby causing Plaintiff hurt, inconvenience, and harm.

178. The contamination of the water at Plaintiff's reservoirs or surface water sources, treatment systems, and related property constitutes a private nuisance depriving Plaintiff of its ability to deliver clean and uncontaminated water to its customers. The nuisance is ongoing.

179. It was reasonably foreseeable, and in fact known to Defendants, that their actions would contaminate, and have contaminated, the water at Plaintiff's reservoirs or surface water sources. The nuisance has caused substantial damage and will continue to cause damages until Plaintiff receives compensatory damages for the necessary improvements of filtration technology that will allow for the removal of PFAS from Plaintiff's water supply.

WHEREFORE, Plaintiff demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.

**COUNT IV – TRESPASS**

180. Plaintiff re-alleges all prior paragraphs as if set forth fully herein.

181. Plaintiff owns and occupies property used to serve its water customers, including water treatment systems, water distribution system, and offices. Plaintiff also has a possessory

interest in the groundwater where Plaintiff withdraws its drinking water in order to treat and sell to its customers.

182. Defendants' intentional acts in failing to contain the discharge of PFAS, knowing that they would contaminate Plaintiff's water supply, caused an invasion of Plaintiff's possessory interest in its property by Defendants' chemicals, which has affected and is affecting Plaintiff's interest in the exclusive possession of its property.

183. Plaintiff did not consent to the invasion of its property by Defendants' chemicals.

184. Defendants knew or should have known that their PFAS would contaminate the water supply and result in an invasion of Plaintiff's possessory interest in its property.

185. Defendants' trespass is continuing.

186. Defendants' continuing trespass has impaired Plaintiff's use of its property and has caused Plaintiff substantial damages.

WHEREFORE, Plaintiff demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.

## COUNT V – WANTONNESS AND PUNITIVE DAMAGES

187. Plaintiff re-alleges all prior paragraphs as if restated herein.

188. Defendants owe a duty to Plaintiff to exercise due and reasonable care in their manufacture, distribution, supply, sales, and/or waste handling and disposal of PFAS to users throughout the State of Alabama and to prevent the discharge of PFAS into the water supply.

189. In breaching the duties described above, Defendants acted in a wanton, willful, and reckless manner.

190. Defendants knew or should have known the danger to Plaintiff created by Defendants' conduct, practices, actions, and inactions.

191. Defendants knew or should have known of the likely impact, harm, damage, and injury their conduct would have on Plaintiff.

192. Defendants' conduct, practices, and inactions evidence Defendants' reckless disregard of the known risk of harm to Plaintiff.

WHEREFORE, Plaintiff demands judgment for punitive damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.

**RELIEF DEMANDED**

Wherefore, Plaintiff respectfully requests this Court grant the following relief:

a) Award Plaintiff damages in an amount to be determined by a jury sufficient to compensate Plaintiff for past and future damage, out-of-pocket expenses, and lost profits and sales;

b) Issue an injunction requiring Defendants to abate their nuisance and/or otherwise remove their chemicals from Plaintiff's water supply and to prevent these chemicals from continuing to contaminate Plaintiff's water supply;

c) Award punitive damages;

d) Award attorney fees and costs and expenses incurred in connection with the litigation of this matter; and

e) Award such other and further relief as this Court may deem just, proper, and equitable.

**JURY DEMAND**

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

Respectfully submitted this 24th day of April 2025.

**FRIEDMAN, DAZZIO & ZULANAS, P.C.**

*/s/ Matt Conn*
MATT CONN (CON062)
LEE PATTERSON (PAT060)
MADISON GITSCHIER (GIT002)
ETHAN WRIGHT (WRI082)
**Counsel for Plaintiff**

3800 Corporate Woods Drive
Birmingham, AL 35242
Phone: 205-278-7000
mconn@friedman-lawyers.com
lpatterson@friedman-lawyers.com
mgitschier@friedman-lawyers.com
ewright@friedman-lawyers.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AT:**

3M COMPANY
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

CHROMALLOY GAS TURBINE LLC
c/o Corporation Service Company
4100 RCA Boulevard, Suite 100
Palm Gardens, FL 33410

CONTITECH USA, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

CORTEVA, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

DAIKIN AMERICA, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

DUPONT DE NEMOURS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DURACELL MANUFACTURING, LLC
c/o CT Corporation System
289 S Culver Street
Lawrenceville, GA, 30046

E.I. DUPONT DE NEMOURS AND COMPANY
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

EIDP, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

FREUDENBERG-NOK GENERAL PARTNERSHIP
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

HENKEL US OPERATIONS CORPORATION
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

INTERFACE, INC.
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

INTERFACEFLOR, LLC
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

JFA LLC
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

KIMBERLY-CLARK CORPORATION
c/o CT Corporation System
289 S Culver Street
Lawrenceville, GA 30046

KLEEN-TEX INDUSTRIES, INC.
c/o Bruce Howard
210 Lukken Industrial Drive East
Lagrange, GA 30241

KLEEN-TEX USA, LLC
c/o Bruce Howard
210 Lukken Industrial Drive East
Lagrange, GA 30241

MILLIKEN & COMPANY
c/o CT Corporation System
289 S Culver Street
Lawrenceville, GA 30046

M+A MATTING, LLC
c/o Jonathan Brock Morman
1729 South Davis Road
Lagrange, GA 30241

MOUNTVILLE MILLS, INC.
c/o Jonathan Brock Morman
201 Ridley Avenue, Suite B
LaGrange, GA 30240

MOUNTVILLE MILLS INTERNATIONAL, LLC
c/o Jonathan Brock Morman
1729 South Davis Road
Lagrange, GA 30241

MOUNTVILLE MILLS RUBBER COMPANY, LLC
c/o Jonathan Brock Morman
1729 South Davis Road
Lagrange, GA 30241

MOUNTVILLE MILLS - THE MATWORKS, LLC
c/o Jonathan Brock Morman
1729 South Davis Road
Lagrange, GA 30241

SPECIALTY FABRICS & CONVERTING, INC.
c/o Continental
Attention General Counsel
1830 MacMillan Park Drive
Fort Mill, SC, 29707

THE CHEMOURS COMPANY
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

THE CHEMOURS COMPANY FC, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

WASTE AWAY GROUP, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

WASTE MANAGEMENT, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WEST POINT FOUNDRY AND MACHINE COMPANY
c/o William Huguley IV
2021 State Line Road
West Point, GA, 31833

WESTPOINT HOME, LLC
c/o Paracorp Incorporated
2 North Jackson Street Suite 605
Montgomery, AL 36104

WESTROCK PACKAGING SYSTEMS, LLC
c/o Corporation Service Company Inc.
641 South Lawrence Street
Montgomery, AL 36104